UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES BIGGS,

                    Plaintiff,

            v.

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY
POLICE OFFICER SOCRATES SOTO, NEW YORK
CITY POLICE OFFICER LUIS RODRIGUEZ, and
NEW YORK CITY POLICE DETECTIVE NELSON
FELIZ,

                    Defendants.

**ECF CASE**

08 Civ. 8123 (PGG)

**MEMORANDUM OPINION &
ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

                    The Complaint in this action alleges claims under (1) 42 U.S.C. § 1983 for

violations of James Biggs' Fourth, Fifth, and Fourteenth Amendment rights; and (2) state law for

assault and battery; negligent hiring, supervision, and retention; intentional infliction of

emotional distress; and malicious prosecution.  As a result of earlier rulings by then-District

Judge Chin,[1] the only remaining claims are for (1) excessive force under the Fourth and

Fourteenth Amendment against Police Officers Socrates Soto and Luis Rodriguez; (2) assault

and battery as against Soto and the City of New York; (3) negligent hiring as against the City of

New York; and (4) intentional infliction of emotional distress as against Soto and Rodriguez.

Defendants have moved for summary judgment as to all of Plaintiff's remaining claims.  For the

reasons stated below, Defendants' motion will be GRANTED.

---

[1]  Judge Chin dismissed Biggs' malicious prosecution claims and all claims against the New
York City Police Department ("NYPD") in a December 22, 2008 Order; dismissed Biggs' Fifth
Amendment claims in a February 18, 2009 Order; and dismissed all claims against Nelson Feliz
in an April 1, 2009 Order.  This case was reassigned to this Court on May 12, 2010.  (Docket No.
34)

## BACKGROUND

Defendants Socrates Soto and Luis Rodriguez are New York City police officers. (Def. R. 56.1 Stat. ¶¶ 3, 13)[2]  At about 3:15 a.m. on September 21, 2007, Officer Rodriguez and his partner were on patrol in the area of East 224th Street in the Bronx.  They were in uniform and in a marked police vehicle.  At that time, they observed a vehicle being driven in an erratic manner.  Biggs was seated in the front passenger seat of this vehicle.  (Id. ¶¶ 2-3, 6, 11)  NYPD Central Dispatch informed Rodriguez that the vehicle had been stolen at knifepoint on September 20, 2007, and that occupants of the vehicle should be considered armed and dangerous.  (Id. ¶¶ 4, 5)

Rodriguez followed the vehicle for a few blocks until it came to a stop; he then put on his vehicle's siren and flashing lights.  Rodriguez ordered the driver to turn off the engine, to put the keys on the roof of the vehicle, to put his hands outside his car window, to open the door from the outside, and to exit the vehicle and lie on the ground.  The driver complied with all of these instructions.  (Id. ¶¶ 6-10)  Rodriguez then ordered Biggs to place his hands outside of the window and to exit the vehicle; Biggs did not comply with either demand.  (Id. ¶¶ 11-12)

Officer Soto of the NYPD's Bronx Auto Larceny Unit heard a radio transmission stating that NYPD officers were following a stolen vehicle on East 224th Street.  After responding to the scene, Officer Soto – also in uniform – observed Biggs sitting in the front seat

---

[2]  To the extent that this Court relies on facts drawn from Defendants' Rule 56.1 statement, it does so because Plaintiff has either not disputed those facts or has not done so with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .  fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).  Plaintiff's Rule 56.1 Statement is entirely inadequate.  Plaintiff does not admit or deny the factual statements set forth in Defendants' Rule 56.1 Statement, but instead sets forth his own account, frequently without supporting citations to the record.  (See Pltf. R. 56.1 Stat.)  In any event, the version of events set forth in Plaintiff's Rule 56.1 Statement is consistent as to all material facts with Defendants' account.

with the passenger door open and his feet outside of the car on the ground.  (Id. ¶¶ 13-14, 42;
Soto Aff. ¶ 3)  Soto and other officers repeatedly ordered Biggs to exit the vehicle and show his
hands, but Biggs did not comply.  (Def. R. 56.1 Stat. ¶¶ 15-16, 18)

      As Rodriguez approached the vehicle, Biggs reached into his sleeve and pulled
out an object with a black handle.  (Id. ¶ 20)  To distract Biggs, Rodriguez shattered the back
window of the car with his baton.  Biggs then stood up, pulled out the object with a black handle
– revealed to be a serrated knife approximately thirteen inches long – and exited the vehicle.  (Id.
¶¶ 21-26, 43)  As Biggs exited the vehicle, he waved the knife over his head in an erratic
manner. [3]  (Id. ¶ 27)  Officer Rodriguez then drew his firearm, backed up, and ordered Biggs to
drop the knife.  Biggs did not comply.  Officer Rodriguez and other officers then repeatedly
ordered Biggs to drop the knife, but Biggs continued to swing the knife over his head, staring at
Rodriguez and the other officers.  (Id. ¶ 28-32)

      With the knife still over his head, Biggs then focused his attention on Rodriguez
and Soto.  (Id. ¶ 33)  Officer Soto instructed Biggs, at least three additional times, to drop the
knife.  Biggs did not comply.  (Id. ¶ 34)  Soto also warned Biggs that he would shoot if Biggs did
not drop the knife.  (Dollin Decl., Ex. A (Biggs Tr.) at 84:9-17)  By that time, Biggs was no more

---

[3]  In his Rule 56.1 Statement, Biggs denies waving the knife over his head erratically.  (Pltf. Rule
56.1 Stat. ¶¶ 27-28)  Biggs cites no evidence contradicting Defendants' account, however, and
thus these facts are deemed admitted.  Giannullo, 322 F.3d at 140.  In any event, Biggs testified
at his deposition that he "had the knife above [his] head" (Dollin Decl., Ex. A (Biggs Tr.) at 86;
see also Pltf. R. 56.1 Stat ¶ 27), and – as discussed below – in pleading guilty to reckless
endangerment, Biggs admitted to "waving a knife in close proximity to police officer Soto."
(Dollin Decl., Ex. I)  Biggs also testified at his deposition that he was "high" at the time of the
incident, having smoked both cocaine and marijuana.  (Dollin Decl., Ex. A (Biggs Tr.) at 63, 65,
66, 86; Def. R. 56.1 Stat. ¶ 45)

than seven or eight feet away from Soto, "within lunging distance."[4]  (Def. R. 56.1 Stat. ¶¶ 37-

38)[5]  Soto feared that Biggs would stab him, and feared for his life as well as for the safety of

Rodriguez and the other officers.  (Id. ¶¶ 39-40)  Accordingly, Soto fired two shots (id. ¶ 40); the

first round struck a vehicle, but the second hit Biggs' right hip.  (Dollin Decl., Ex. E ¶ 18)

   As a result of this incident, Biggs was charged with, and pleaded guilty to,

reckless endangerment in the first degree.  The criminal information filed against Biggs charged

that "under circumstances evincing a depraved indifference to human life, [he] recklessly

engage[d] in conduct which created a grave risk of death to another person."  (Id., Ex. I; Def. R.

56.1 Stat. ¶ 51)  During his September 22, 2008 plea allocution, Biggs admitted that he had

"created a grave risk of death" by "pointing and waving a knife in close proximity to Police

Officer Soto."  (Dollin Decl. Ex. B at 3-4; Def. R. 56.1 Stat. ¶ 52)

## DISCUSSION

   Summary judgment is warranted when the moving party shows that "there is no

genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  "The movant's burden will be satisfied if he can point to an absence of

evidence to support an essential element of the nonmoving party's claim."  Goenaga v. March of

Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

---

[4]  There is evidence in the record that Biggs lunged at Officers Soto and Rodriguez (Dollin Decl.,
Ex. D (Rodriguez Aff.) ¶ 26) and that after Rodriguez initially retreated, Biggs "began to rapidly
approach [Soto] with the knife in his hands."  (Dollin Decl., Ex. E (Soto Aff.) ¶ 11)  The
Defendants do not include any of these alleged facts in their Rule 56.1 Statement, however, and
explicitly concede in their brief "that the issue of whether plaintiff 'lunged' at the officers is in
dispute."  (Def. Br. 9)  Accordingly, for purposes of this motion, this Court assumes that Biggs
was not advancing or lunging towards Soto or any other officer when the shots were fired.
[5]  Biggs contends that there is a factual dispute as to the distance between Biggs and Soto (Pltf.
Br. 3), but Biggs testified at his deposition that he was only seven to eight feet away from Soto
when the shots were fired.  (Dollin Decl., Ex. A (Biggs Tr.) at 87:10-11)

"A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). However, "a party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).

## I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SECTION 1983 CLAIM

### A.   Applicable Law

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham, 490 U.S. at 394. In cases where a citizen claims "that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' . . . [s]uch claims are properly analyzed under the Fourth Amendment's 'objective reasonableness standard. . . .'" Graham, 490 U.S. at

388; see also Tennessee v. Garner, 471 U.S. 1, 7 (1985).[6] "The 'reasonableness' of a particular

use of force must be judged from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1,

20-22 (1968)). "The calculus of reasonableness must embody allowance for the fact that police

officers are often forced to make split-second judgments – in circumstances that are tense,

uncertain, and rapidly evolving – about the amount of force that is necessary in a particular

situation." Id. at 396-97.

Where an officer has employed deadly force,[7] the test for objective

reasonableness is well established:

> In order for it to be objectively reasonable for an officer to use deadly force to
> apprehend a suspect, he must have probable cause to believe that the suspect
> poses a significant threat of death or serious physical injury to the officer or
> others. Tennessee v. Garner, 471 U.S. 1, 3, 11 (1985). The objective
> reasonableness test will not be met if, on an objective basis, it is obvious that no
> reasonably competent officer would have concluded in that moment that his use
> of deadly force was necessary. See Malley v. Briggs, 475 U.S. 335, 341 (1986).

Pub. Adm'r of Queens County ex rel. Estate & Beneficiaries of Guzman v. City of New York,

No. 06 Civ. 7099, 2009 WL 498976, at *5 (S.D.N.Y. Feb. 24, 2009).

"[P]roper application [of the reasonableness test] requires careful attention to the

facts and circumstances of each particular case, including the severity of the crime at issue,

---

[6] Accordingly, to the extent Biggs' excessive force claim is founded on the Fourteenth
Amendment, it must be dismissed. See, e.g., Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir.
1998).

[7] "Under federal law, a police officer is authorized to use deadly force 'if the suspect threatens
the officer with a weapon' or 'poses a threat of serious physical harm, either to the officer or to
others.'" Stevens v. Metro. Transp. Auth. Police Dep't, 293 F. Supp. 2d 415, 420 (S.D.N.Y.
2003) (citing Garner, 471 U.S. at 11-12). Under New York law, a police officer effecting an
arrest may use deadly force if the officer "reasonably believes that . . . deadly physical force is
necessary to defend the police officer or peace officer or another person from what the officer
reasonably believes to be the use or imminent use of deadly physical force." N.Y. Penal Law §
35.30(1)(c) (McKinney 2007).

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Garner, 471 U.S. at 8-9). "In . . . circumstances [where an officer uses deadly force], the 'immediate threat' criterion controls the outcome of this Court's evaluation." Salim v. Proulx, 93 F.3d 86, 91 (2d Cir. 1996) (citing Garner, 471 U.S. at 11-12).

"To survive summary judgment [in a deadly force case], the [plaintiff must] raise a material question of fact as to whether [the officer's] decision to use deadly force was 'objectively reasonable,' or in other words, whether he had 'probable cause to believe that [the plaintiff] pose[d] a significant threat of death or serious physical injury to [himself] or others.'" Costello v. Town of Warwick, 273 F. App'x 118, 119 (2d Cir. 2008) (quoting Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 762 (2d Cir. 2003)); see also O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003) ("It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.").

"Disputes over reasonableness are usually fact questions for juries.  However, in qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene.  With this concern in mind, we have held that when the factual record is not in serious dispute . . . [,] [t]he ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide."  Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) (citing Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990), cert. denied, 498 U.S. 967, 1 (1990); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995) ("[I]mmunity ordinarily should be

decided by the court . . . in those cases where the facts concerning the availability of the defense are undisputed."); Finnegan v. Fountain, 915 F.2d 817, 821 (2d Cir. 1990) ("Once disputed factual issues are resolved, the application of qualified immunity is . . . ultimately a question of law for the court to decide.")).

### B.    Analysis

Defendants argue that it was objectively reasonable for Officer Soto to use deadly force given that (1) Biggs repeatedly ignored orders to drop the knife – which he was holding in a potentially striking position above his head; and (2) Biggs was standing in close proximity to Soto. (Def. Br. 6) Biggs argues that summary judgment should be denied, however, because there are genuine issues of material fact as to the distance between Biggs and Soto, whether Biggs lunged at Soto, and whether more than two shots were fired.[8] (Pltf. Br. 4) Because Biggs has not demonstrated that a material issue of fact exists as to whether Officer Soto had probable cause to believe that Biggs posed a "significant threat of death or serious physical injury to

---

[8] In his opposition brief, Biggs makes an untimely application to add NYPD Officer Samuel Castro as a defendant in this action. (Pltf. Br. 6) Biggs contends that because Castro was at the scene and his weapon was not checked for discharge, a genuine issue of material fact exists as to whether Castro also fired his weapon. (Pltf. Br. 5) Biggs argues that because a police report states that the "passenger side windows were blown out," there is evidence that more than two shots were fired. (Pltf. Br. 4)

Biggs' application to add Castro as a defendant is denied. As an initial matter, an "opposition [brief] to a summary judgment motion is 'not the proper place to amend a complaint.'" Weltz v. City of New York, No. 99 Civ. 3932, 2004 WL 1907309, at *4 (S.D.N.Y. Aug. 25, 2004) (citing Covello v. Depository Trust Co., 212 F. Supp. 2d 109, 119 (E.D.N.Y. 2002)). In any event, there is no evidence that Castro discharged his weapon or that more than two shots were fired. At his deposition, Biggs testified that only two shots were fired (Dollin Decl., Ex. A (Biggs Tr.) at 110:17-23), and the police report cited by Biggs states that only two rounds were fired. (Brown Decl., Ex. 3) As to the smashing of the rear window, it is undisputed that Officer Rodriguez shattered the rear window with his baton in order to distract Biggs, after Biggs began pulling a knife out of his sleeve. (Def. R. 56.1 Stat. ¶¶ 21-26) Finally, Plaintiff's Rule 56.1 Statement does not dispute that only two shots were fired.

[Officer Soto] or others," see Vargo, 331 F.3d at 36, Defendants are entitled to summary judgment.

The relevant facts here are undisputed and demonstrate that Soto's actions were objectively reasonable. Uniformed officers initially approached Biggs after learning that the vehicle in which he was travelling had been stolen at knifepoint. (Def. R. 56.1 Stat. ¶¶ 4, 5) The officers instructed Biggs to put his hands out of the car window and exit the vehicle, but he refused to comply. (Id. ¶¶ 11, 12) Instead, Biggs reached into his sleeve and pulled out a 13-inch serrated steak knife. (Id. ¶¶ 20, 22, 24-25) Biggs then got out of the vehicle and began waving the knife over his head in an erratic manner. (Id. ¶ 27) Officer Rodriguez stepped back, drew his firearm, and ordered Biggs to drop the knife. Biggs – whose irrational behavior was fueled by cocaine, marijuana, and beer ingested in the hours preceding this incident – did not comply, but turned his attention to Rodriguez and Soto, who stood only seven to eight feet away, "within lunging distance." (Id. ¶¶ 28-32, 44-45) Officer Soto then repeatedly demanded that Biggs drop the knife, warning that Biggs would otherwise be shot.[9] Biggs heard the orders and the warning but did not comply, and instead continued to wave the knife above his head in a threatening manner that caused Soto to fear for his life and the safety of nearby officers. (Id. ¶¶ 35-40) Under these circumstances, which are undisputed for purposes of this motion, Soto had probable cause to believe that Biggs posed a significant threat of death or serious physical injury to Soto and his fellow officers, and thus Soto's decision to use deadly force was objectively reasonable. See Vargo, 331 F.3d at 36; Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005) ("'[A]n officer's decision to use deadly force is objectively reasonable only if the officer

---

[9] At his deposition, Biggs explained that he did not drop the knife because he was "high." (Dollin Decl., Ex. A (Biggs Tr.) at 86)

has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" (quoting Cowan, 352 F.3d at 762)).

This Court's conclusion that Soto's use of deadly force was objectively reasonable is further supported by Biggs' admissions in pleading guilty to reckless endangerment.  During the plea proceeding, Biggs admitted that he had "recklessly engage[d] in conduct which created a grave risk of death" by "pointing and waving a knife in close proximity to Police Officer Soto."  (Def. R. 56.1 Stat. ¶ 52; Dollin Decl. Ex. B at 3-4)  As a result of his plea, Biggs is collaterally estopped from denying that "under circumstances evincing a depraved indifference to human life, [he] recklessly engage[d] in conduct which created a grave risk of death to [Officer Soto]."  (Dollin Decl., Ex. I; Def. R. 56.1 Stat. ¶ 51)

Under New York law,[10] the collateral estoppel doctrine applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action."  Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999).  As noted above, during his September 22, 2008 plea allocution, Biggs admitted that he had "created a grave risk of death" by "pointing and waving a knife in close proximity to Police Officer Soto."  (Dollin Decl. Ex. B at 3-4; Def. R. 56.1 Stat. ¶ 52)  Biggs is now collaterally estopped from denying these facts, because he had a full and fair opportunity to litigate the nature of his conduct during the criminal proceedings, and a finding concerning his conduct was necessary to support his conviction for reckless endangerment in the first degree.  See Parker, 93 N.Y.2d at 350; see also Brothers v. Akshar, 05-CV-1265 (TJM), slip op. at 14 (N.D.N.Y. July 10, 2007), aff'd, No. 07-

---

[10] "In conducting [the collateral estoppel] analysis, a federal court must apply the rules of collateral estoppel of the state in which the prior judgment was rendered, which in this case is New York."  Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) (citing Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999)).

3204-cv, 2010 WL 2649814 (2d Cir. June 30, 2010); Diggs v. N.Y. Police Dep't, No. 04CV1849 (CBA)(LB), 2005 WL 3533158, at *4 (E.D.N.Y. Dec. 22, 2005) ("[P]laintiff's conduct was at issue in both the criminal and present proceeding, it was actually litigated and decided in the criminal trial, plaintiff had a full and fair opportunity to litigate the issue of his conduct at his criminal trial, and his conduct was necessary to support the final judgment on the merits that he had in fact committed those crimes.").

In admitting that he threatened and endangered Soto by "pointing and waving a knife in close proximity to [Soto]," Biggs provided a factual record that justifies Soto's use of deadly force.  See Stevens, 293 F. Supp. 2d at 420 (citing Garner, 471 U.S. at 11-12); see also Diggs, 2005 WL 3533158, at *4 (citing Estate of Kenneth Jackson v. City of Rochester, 705 F. Supp. 779, 783 (W.D.N.Y. 1989) ("If a suspect threatens an officer with a weapon, the officer may use deadly force in response.").

With respect to Plaintiff's claimed issues of material fact, none preclude summary judgment.  As discussed above, there is no issue of fact as to the distance between Biggs and Soto at the time the shots were fired, nor is there any evidence demonstrating that more than two shots were fired.  While Defendants have conceded that there is an issue of fact as to whether Biggs lunged at Officer Soto,[11] this Court concludes that this factual dispute is not material. Given the proximity between Biggs and Soto and the fact that Biggs was within lunging distance of the officer, Biggs' waving of the knife above his head, his focus on Soto and Rodriguez, and

---

[11]  The basis for Defendants' concession on this point is not clear.  This Court has found nothing in the record that places in dispute Officer Rodriguez's sworn statement that "Plaintiff quickly lunged toward me and Officer Soto, and as he did so, the blade of the knife was pointed in our direction."  (Dollin Decl., Ex. D (Rodriguez Aff.) ¶ 26)  Plaintiff provides no evidentiary support for his assertion that there is an issue of fact as to whether Biggs lunged towards the officers, merely stating that Defendants have conceded this point.  (Pltf. R. 56.1 Stat. ¶ 38)

his irrational refusal to obey orders to drop the knife, Officer Soto was not obligated to wait until Biggs attempted to slash him before exercising deadly force.

    Plaintiff cites no legal authority in support of his excessive force claim, but appears to argue that Officer Soto was required to first retreat or attempt the use of non-lethal force.  When police officers are faced with an imminent threat of death or serious bodily harm, however, they have no duty to retreat and may employ deadly force.  See Merzon v. County of Suffolk, 767 F. Supp. 432, 448 (E.D.N.Y. 1991) ("An officer is authorized to use deadly physical force when he or she reasonably believes such to be necessary to defend the officer or another from what he or she reasonably believes to be the use of imminent use of deadly physical force.  Under such circumstances, the officer is under no duty to retreat."); N.Y. Penal Law § 35.15[2][a][ii] ("A person may not use deadly force upon another person under circumstances specified in subdivision one unless:  (a) the actor reasonably believes that such other person is using or about to use deadly physical force. . . . [T]he actor is under no duty to retreat if he or she is . . . (ii) a police officer . . . acting pursuant to section 35.30.").  Given the imminent threat posed by Plaintiff – who was "pointing and waving a knife in close proximity to . . . Soto" in a manner that "created a grave risk of death" – it was objectively reasonable for Soto to employ deadly force without retreating or first attempting the use of non-lethal means.  See Brothers v. Akshar, 05-CV-1265 (TJM), slip op. at 14 (N.D.N.Y. July 10, 2007), aff'd, No. 07-3204-cv, 2010 WL 2649814 (2d Cir. June 30, 2010) (noting that where an officer faces an immediate threat, there may be "no opportunity to take a less drastic measure, such as firing a warning shot").

    In sum, Soto's failure to retreat or use non-lethal force – even if mistaken – was not unconstitutional.  See Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) ("[W]e are not

concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene. "); see also Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) ("[The officer's] actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force."). Because it was, under the circumstances here, objectively reasonable for Soto to employ deadly force, Defendants are entitled to summary judgment on Plaintiff's Section 1983 claims.[12]

## II.   **QUALIFIED IMMUNITY**

Defendants also argue that they are entitled to summary judgment on qualified immunity grounds.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at

---

[12]  Biggs' Section 1983 claim against Rodriguez fails for the same reasons discussed above. Plaintiff contends that Rodriguez used force in conjunction with the shooting when "he smashed the rear window of the car in preparation for anticipated firing of weaponry at plaintiff."  (Pltf. Br. 3)  A police officer is personally involved in the use of excessive force if he or she either:  (1) "directly participates," defined as the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal," see Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001), or (2) fails "to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

Here, there is no evidence that Rodriguez directly participated in the shooting.  See Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001).  Accordingly, Biggs' Section 1983 claim against Rodriguez appears to be premised on a failure to intervene theory.  Given this Court's conclusion that Soto's use of force was objectively reasonable, Biggs cannot prevail on his claim that Rodriguez should have intervened to prevent the shooting.

the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 (1991) (per

curiam).

> "[Q]ualified immunity . . . is sufficient to shield executive employees from civil

liability under § 1983 if either (1) their conduct did not violate clearly established rights of which

a reasonable person would have known, or (2) it was objectively reasonable [for them] to believe

that their acts did not violate these clearly established rights." Cornejo v. Bell, 592 F.3d 121, 128

(2d Cir. 2010); see also Amore v. Novarro, 2010 WL 3960574, at *5 (2d Cir. Oct. 12, 2010) ("A

police officer who has an objectively reasonable belief that his actions are lawful is entitled to

qualified immunity." (quoting Okin v. Village of Cornwall-On-Hudson Police Dep't, 20 577 F.3d

415, 433 (2d Cir. 2009)).

> In Fourth Amendment excessive force cases,

> "the qualified immunity inquiry is the same as the inquiry made on the merits."
> Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994) (cited in O'Bert v. Vargo, 331
> F.3d 29, 37 (2d Cir. 2003)).  The Second Circuit has stated that in excessive force
> cases the qualified immunity and Fourth Amendment analyses often "converge on
> one question[:] Whether in the particular circumstances faced by the officer, a
> reasonable officer would believe that the force employed would be lawful."
> Cowan v. Breen, 352 F.3d 756, 764 n.7 (2d Cir. 2003) (citation omitted).
> Accordingly, the answer to either the qualified immunity or the Fourth
> Amendment question often resolves the other.  Id.

Guzman, 2009 WL 498976, *5; see also Roy, 42 F.3d at 695 (noting that because the Fourth

Amendment excessive force standard and the qualified immunity standard turn on whether the

officer's conduct was objectively reasonable, the outcome likely would have been the same even

if the officers had not raised an immunity defense); Wardlaw v. Pickett, 1 F.3d 1297, 1303 (D.C.

Cir. 1993) ("We believe [the objective reasonableness] standard provides the test for evaluating

both the scope of the officer's qualified immunity as well as the plaintiff's claim of excessive

force under the [F]ourth [A]mendment.").

"Summary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the defendant 'show[s] that no reasonable jury, when viewing the evidence in the light most favorable to [plaintiff], could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." Vargo, 331 F.3d at 37 (quoting Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001)). Courts deny summary judgment where there are disputed issues of material fact as to whether a defendant's actions were reasonable. Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (affirming denial of summary judgment when parties provided conflicting accounts of the events that led to the claimed use of excessive force); see also Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) ("Because summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain, the district court erred by entering summary judgment in favor of [the police officer]." (citing Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994))); Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded." (citing Hemphill, 141 F.3d at 416-18)).

Here, for the reasons stated above, Biggs' Fourth Amendment rights were not violated when he was shot by Soto. Because Soto's actions were objectively reasonable under the Fourth Amendment excessive force standard, it follows that Defendants are also entitled to summary judgment on qualified immunity grounds. See Cowan, 352 F.3d at 764 n.7; Roy, 42 F.3d 695 (observing that because the Fourth Amendment excessive force standard and the qualified immunity standard turn on whether the officer's conduct was objectively reasonable,

the outcome probably would have been the same even if the officers had not raised an immunity

defense); Wardlaw, 1 F.3d at 1303 ("We believe [the objective reasonableness] standard

provides the test for evaluating both the scope of the officer's qualified immunity as well as the

plaintiff's claim of excessive force under the [F]ourth [A]mendment.").

## III.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS

### A.     Assault and Battery

Under New York law, a "civil 'assault' is the intentional placing of another in

apprehension of imminent harmful or offensive contact."  Merzon v. County of Suffolk, 767 F.

Supp. 432, 448 (E.D.N.Y. 1991) (citing Lambertson v. United States, 528 F.2d 441, 444 (2d Cir.

1976)).  "The elements of a civil 'battery' are (1) bodily contact, which is (2) harmful or

offensive in nature, and (3) made with intent."  Merzon, 767 F. Supp. at 448 (citing Masters v.

Becker, 22 A.D.2d 118 (2d Dept 1964); Portnoy v. Bucalo, 82 Misc. 2d 590 (Sup. Ct. 1975)).

"In order to establish the defense of justification . . . it must be shown that the

person attacked was under a danger or apparent danger of death or of great bodily harm. . . ."

Merzon, 767 F. Supp. at 448 (citing Barbagallo v. Americana Corp., 32 A.D.2d 622 (1st Dept

1969)).  The use of self-defense is "subject to the fundamental limitation that in protecting

oneself no more force is permissible than will reasonably effect such protection."  Id. (quoting

Decker, 36 Misc. 2d at 220).

Here, this Court's dismissal of Biggs' excessive force claim is fatal to his assault

and battery claim:

> The same standard is used to evaluate claims of assault and battery under New
> York law and of excessive force under the Fourth Amendment.  Posr v. Doherty,
> 944 F.2d 91, 94-95 (2d Cir. 1991).  Under federal or state law, a plaintiff must
> show that "the amount of force used was objectively unreasonable" based upon a
> consideration of "the perspective of the officer at the time of the arrest."

<u>Anthony v. City of New York</u>, No. 00 Civ. 4688 (DLC), 2001 WL 741743, at *13 (S.D.N.Y. July 2, 2001) (quoting <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996)); <u>see also</u> <u>Pierre-Antoine v. City of New York</u>, 04 Civ. 6987 (GEL), 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) ("Because there is a genuine issue of material fact as to whether [the officer] used excessive force against [the plaintiff], there is likewise a genuine issue of material fact as to whether [the officer] committed assault against [the plaintiff], and the motion for summary judgment is thus denied with respect to the assault claim." (citing <u>Anthony</u>, 2001 WL 741743, at *13)); <u>Hogan v. Franco</u>, 896 F. Supp. 1313, 1315 n.2 (N.D.N.Y. 1995) ("The test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim.")); <u>Johnson v. Harron</u>, No. 91-CV-1460, 1995 WL 319943, at *34 n.3 (N.D.N.Y. May 23, 1995) (citing <u>Lippert v. State</u>, 139 N.Y.S.2d 751 (Ct. Cl. 1955), <u>reh'g granted on other grounds</u>, 1995 WL 411175, at *1 (N.D.N.Y. July 6, 1995) ("[W]ith respect to plaintiff's supplemental assault and battery claim, the court notes that the test for whether a plaintiff can maintain such a cause of action against law enforcement officials is whether the force used was 'reasonable,' the exact same test as the one used to analyze a Fourth Amendment excessive force claim.").

Defendants are entitled to summary judgment on Biggs' assault and battery claims for the same reason that Biggs' excessive force claim was dismissed:  Officer Soto's use of deadly force was objectively reasonable under the circumstances.

### B. **Intentional Infliction of Emotional Distress**

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."

Anthony v. City of New York, No. 00 Civ. 4688 (DLC), 2001 WL 741743, at *13

(S.D.N.Y. July 2, 2001) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)).

        Plaintiff "must plead and prove conduct which is so extreme and outrageous that

it 'transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized

society,'" Pawlicki v. City of Ithaca, 993 F. Supp. 140, 145-46 (N.D.N.Y. 1998) (citing Shapiro

v. County of Nassau, 202 A.D.2d 358 (1st Dept 1994)), and must also present medical evidence

in support of his claim.  Singh, 2005 WL 236511, at *14 (citing Bujnicki v. American Paving

and Excavating, Inc., No. 99 CV 646S, 2004 WL 1071674, at *14 (W.D.N.Y. Mar 30, 2004));

Pepe v. Malansky, 67 F. Supp. 2d 186, 187 n.1 (S.D.N.Y. 1999); Walentas v. Johnes, 257

A.D.2d 352, 353 (1st Dep't 1999) ("[T]o prevail on this state law claim, [the plaintiff] would

also have to establish through medical evidence that he suffered severe emotional distress.").

Courts routinely grant summary judgment against plaintiffs where they have failed to present

medical evidence demonstrating severe emotional injury.  See Pierre-Antoine, 2006 WL

1292076, at *8; Christenson v. Gutman, 249 A.D.2d 805 (1998) (citing Glendora v. Walsh, 227

A.D.2d 377, 377-378; Erani v. Flax, 193 A.D.2d 777 (2nd Dep't 1993)) ("[P]laintiffs' failure to

submit medical evidence or the need to seek medical attention resulted in conclusory or

speculative allegations that were properly dismissed on summary judgment[.]").

        Here, Biggs has offered no medical evidence of severe emotional injury.

Accordingly, Defendants are entitled to summary judgment concerning his claim for intentional

infliction of emotional distress.  See Walentas, 257 A.D.2d at 353; Pierre-Antoine, 2006 WL

1292076, at *8; Pepe, 67 F. Supp. 2d at 187 n.1 (dismissing intentional infliction of emotional

distress claim where plaintiffs failed to present medical evidence).

C.      <u>Negligent Hiring, Supervision, and Retention</u>

"In instances where an employer cannot be held vicariously liable for its employee's torts, the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision." <u>Kenneth R. v. Roman Catholic Diocese of Brooklyn</u>, 229 A.D.2d 159, 161 (2d Dept 1997). "A claim for negligent supervision or retention arises when an employer places an employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in supervising or retaining the employee." <u>Vione v. Tewell</u>, 820 N.Y.S.2d 682, 687 (N.Y. Sup. Ct. 2006).

Under New York law, a claim for negligent hiring, supervision or retention, "in addition to the standard elements of negligence," requires "a plaintiff [to] show:  (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." <u>Ehrens v. Lutheran Church</u>, 385 F.3d 232, 235 (2d Cir. 2004) (quoting <u>Kenneth R.</u>, 229 A.D.2d at 161 (internal citations omitted)). "A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of 'facts that would lead a reasonably prudent person to investigate that prospective employee.'" <u>Richardson v. City of New York</u>, No. 04 Civ. 05314(THK), 2006 WL 3771115, at *13 (S.D.N.Y. Dec. 21, 2006) (quoting <u>Adorno v. Correctional Services Corp.</u>, 312 F. Supp. 2d 505, 518 (S.D.N.Y. 2004)); <u>see also</u> <u>Wilson v. Diocese of N.Y. of the Episcopal Church</u>, No. 96 Civ. 2400(JGK), 1998 WL 82921, at *3-4 (S.D.N.Y. Feb. 26, 1998).  Summary judgment is granted where there is no

evidence that the employer negligently hired an employee.  See, e.g., Bouchard v. N.Y. Archdiocese, No. 04 Civ. 9978(PGG), 2010 WL 1173001, at *4-5 (S.D.N.Y. Mar 24, 2010) (granting summary judgment against the plaintiff's negligent hiring claim because there was no evidence that the defendant was on notice of a Catholic priest's alleged propensity to commit sexual abuse); Wilson v. Diocese of New York of Episcopal Church, No. 96 Civ. 2400, 1998 WL 82921, at *3-5 (S.D.N.Y. Feb. 26, 1998) (same).

Here, the City is entitled to summary judgment on Biggs' negligent hiring claim because he has offered no evidence that the City knew or should have known of any propensity on Soto or Rodriguez's part to injure arrestees or others.  See Tatum v. City of New York, No. 06 Cv. 4290(BSJ)(GWG), 2009 WL 124881, at *10 (Jan. 20, 2009) (dismissing the plaintiff's negligent hiring claim where he failed to "ma[ke], let alone substantiat[e], any . . . allegations" that the City of New York knew or should have known of a corrections officer's propensity to commit injury).

Biggs' negligent hiring claim must also be dismissed because Soto and Rodriguez were acting within the scope of their employment.  See Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158, at *9 (S.D.N.Y. Apr. 15, 2004) ("When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of respondeat superior, and no claim may proceed against the employer for negligent hiring or retention.").  Here, there is no dispute that Soto and Rodriguez were acting within the scope of their duties as police officers.  Accordingly, "no claim may proceed against the [City] for negligent hiring or retention."  See id.; Gurevich v. City of New York, No. 06 Civ. 1646(GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008) ("A claim for negligent hiring or supervision can only proceed against an employer for an employee acting

outside the scope of her employment." (quoting <u>Rowley v. City of New York</u>, No. 00 Civ. 1793, 2005 WL 2429514, at *12 (S.D.N.Y. Sept. 30, 2005)).

<b><u>CONCLUSION</u></b>

For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Plaintiff's Fourth and Fourteenth Amendment excessive force claims against Soto (First, Second, and Fourth Federal Claims); as to Plaintiff's Fourth Amendment excessive force claim against Rodriguez (Third Federal Claim); as to Plaintiff's assault and battery claim against Soto and the City of New York (First, Third, and Fifth State Law Claims); as to Plaintiff's negligent hiring claim against the City of New York (Seventh State Law Claim); and as to Plaintiff's intentional infliction of emotional distress claims against Soto and Rodriguez (Eighth and Ninth State Law Claims).

The Clerk of the Court is directed to terminate the motion (Docket No. 15) and to close this case.

Dated: New York, New York
      November 15, 2010

                              SO ORDERED.

                              Paul G. Gardephe
                              United States District Judge